UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JEFFREY JOHNSON and JOHN GOODWIN, ) | |
| ) | |
| Plaintiffs ) | |
| v. ) | No. 1:00-CV-310 |
| ) | Chief Judge Curtis L. Collier |
| UNITED PARCEL SERVICE, INC. ) | |
| ) | |
| Defendant ) | |

## **M E M O R A N D U M**

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has reversed and remanded this case for a new trial on Plaintiffs Jeffrey Johnson ("Plaintiff Johnson") and John Goodwin's ("Plaintiff Goodwin") (collectively "Plaintiffs") hostile work environment claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). *See Johnson v. United Parcel Service, Inc.*, 117 Fed. Appx. 444 (6th Cir. Dec. 21, 2004) (unpublished).

The Court recently issued a show cause order requesting responses from the parties as to why Plaintiffs' claims should not be tried separately (Court File No. 280). Both Plaintiffs and Defendant United Parcel Service, Inc. ("Defendant UPS") responded (*see* Court File Nos. 281, 284). For the following reasons, the Court **WILL NOT SEVER** Plaintiffs' claims for trial.

### I.  **PROCEDURAL HISTORY**

This case originally involved claims by seven named plaintiffs (*see* Court File No. 169, Third Amended Complaint). The severance issue arose before this case went to trial the first time, on Defendant UPS's Amended Motion to Sever Plaintiffs' Claims or, in the Alternative, to Order Separate Trials (Court File No. 36). The Court at that time believed all seven original plaintiffs'

claims would involve many overlapping issues of fact, and, after extensive legal analysis, denied Defendant's motion to sever on that basis (*see* Court File Nos. 72, 73).

The seven plaintiffs' claims proceeded to trial, which lasted fifteen days between April 2002 and November 2002. As the evidence was presented at trial, the Court found its conclusion on the pretrial motion to sever was not supported by that evidence. In fact the evidence clearly demonstrated the plaintiffs' claims actually involved separate factual backgrounds relevant to each plaintiff's individual employment history with Defendant UPS, and many different actors who allegedly took part in the discrimination.[1] Of even greater importance the plaintiffs' subjective perception and reaction to their work environment differed so substantially that a common trial created unnecessary problems.

On August 2, 2002, the Court began hearing Defendant UPS's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. The Court granted the motion as to Plaintiff Johnson's failure to promote and disparate treatment claims, but took the motion under advisement as to Plaintiff Johnson's hostile work environment claims (*see* Court File No. 217). On August 5, 2002, the Rule 50 arguments continued and the Court granted the motion as to Plaintiff Goodwin's disparate treatment and hostile work environment claims (*see* Court File No. 218). Then, on August 6, 2002, the Court also granted the motion as to Plaintiff Johnson's hostile work environment claims (*see* Court File No. 219).

Plaintiffs Johnson and Goodwin appealed the Court's Rule 50 decisions to the Sixth Circuit, which reversed the Court's decision as to Plaintiffs' hostile work environment claims under Title

---

[1]The Sixth Circuit noted this in its opinion, which separately laid out the facts and analysis relevant to each Plaintiffs' Johnson and Goodwin's claims on appeal. *See Johnson*, 117 Fed. Appx. at 447.

2

VII only. *See Johnson*, 117 Fed. Appx. 444. Plaintiffs allege Defendant UPS had a hostile work environment created by harassment, belittlement, and management's failure to take appropriate action on claims of racial discrimination as well as by the underlying claims of racially motivated discrimination alleged by each of the plaintiffs. The case is now ready to proceed to trial on April 3, 2006 on this sole remaining claim.

## II. RELEVANT FACTS

The Court will outline the evidence Plaintiffs submitted at the first trial on the issue of racial harassment under Title VII, construing it in the light most favorable to Plaintiffs. Plaintiffs are both of African descent and were or are employed by Defendant UPS. Plaintiff Johnson was hired by Defendant UPS in 1984 as a package car driver. Plaintiff Goodwin was hired on a part-time basis by Defendant UPS in 1988, then began working full-time as a package car driver in 1994. Both Plaintiffs remained employed in that same capacity with UPS as of the time of the most recent filings in their appeal.

Plaintiff Goodwin testified he sought a driver position in 1993 in Defendant UPS's "north center" but did not obtain the position, and the "north center" manager, Mike Clements, commented to another driver Goodwin would instead be "going to Alton Park, with his own kind." Plaintiff Goodwin testified Alton Park is an inner-city housing project in Chattanooga. Plaintiff Goodwin further testified in 1994, while he was taking time off to recover from an on-the-job injury, his manager Mr. Milligan called him around Christmas and told Goodwin he "was going to have a slim Christmas," but Milligan took up donations for white drivers who were injured at the same time.

3

Both Plaintiffs testified they knew about an incident in 1999, when an employee of Defendant UPS and former plaintiff in this case, Eddie J. Thomas, Jr., was assaulted by a coworker, John Althoff. John Althoff, while making racist comments, threw a package at Eddie Thomas's head. Although Eddie Thomas testified John Althoff initiated all physical contact, Althoff was suspended for only one day after this incident.

Plaintiff Goodwin alleged he received supervision and discipline other white coworkers who had engaged in the same behavior did not receive. Plaintiff Goodwin testified his supervisor, Steve Burtnett, supervised him too closely, including subjecting him to an excessive number of supervised rides. Union business agent Wes Trotterchaud testified these supervised rides were unpleasant and were directed disproportionately at black employees. Plaintiff Goodwin additionally testified on one occasion Steve Burtnett screamed at him to roll down his sleeves even though white employees were allowed to work with their sleeves rolled up, then Chattanooga division manager Gary Todd told Goodwin to leave the building.

Plaintiff Goodwin also presented evidence about daily employee meetings, during which white employees were given more freedom to interact than African American employees were allowed. Specifically, Plaintiff Goodwin testified one morning he turned to address a comment to one of his African-American coworkers during the meeting and the supervisor stopped the meeting and asked Goodwin to stop talking. Plaintiff Goodwin further contended white employees disrupted the same meeting on a daily basis, engaging in horseplay and "cutting up" without being disciplined for their conduct.

Plaintiff Johnson alleged Steve Burtnett, who also was his supervisor, told him Jimmy Buquo would ride with him on his delivery route and would "haul [Johnson] around all day . . ." Plaintiff

Johnson was offended by the use of the word "haul." Plaintiff Johnson told Gary Todd about this comment, and of his plan to file a grievance based on racial discrimination; Todd responded "he's tired of African Americans complaining." Plaintiff Johnson also alleged a white coworker, Tony Day, was allowed to count each package he delivered during one delivery stop as a separate delivery to make it appear he had made more delivery stops than he actually had made. When Plaintiff Johnson attempted this same procedure, he was reprimanded by his supervisor, Steve Burtnett, and accused of "stealing, falsifying records and stealing company time."

Plaintiff Johnson further testified he spoke with union business agent Wes Trotterchaud about his grievances regarding racial discrimination, and Trotterchaud told Johnson Defendant UPS would not address those grievances because Gary Todd had racial animus. Wes Trotterchaud testified Gary Todd had, on at least ten occasions, mocked the manner in which African Americans speak. Additionally, Plaintiff Johnson reported he and an employee of Defendant UPS and former plaintiff in this case, Gregory Owens, overheard a conversation between Gary Todd and Wes Trotterchaud in which Todd used the word "n----r." After this conversation, Plaintiff Johnson and Gregory Owens approached Wes Trotterchaud about what they had heard and Trotterchaud confirmed to them Gary Todd often mocked the manner in which African Americans speak.

Wes Trotterchaud also testified Plaintiff Johnson's supervisor, Steve Burtnett, and others attempted to discipline Johnson for wearing prescription sunglasses indoors, and Burtnett approached Johnson about taking too long making deliveries at a time when Johnson was actually ahead of schedule.

### III. ANALYSIS

The Court must decide whether Plaintiffs' claims meet the requirements for joinder pursuant to Fed. R. Civ. P. 20 or whether they are so unrelated to each other as to require severance or separate trials pursuant to Fed. R. Civ. P. 21. For the reasons stated herein, the Court **WILL NOT SEVER** Plaintiffs' claims for trial.

Defendant UPS in its original motion to sever argued the claims of each plaintiff are so different from those of the other plaintiffs the plaintiffs fail to meet the requirements for permissive joinder under Fed. R. Civ. P. 20; therefore, the plaintiffs should be severed pursuant to Fed. R. Civ. P. 21 with each plaintiff maintaining his own separate action. In the alternative, Defendant UPS asked for separate trials as to each plaintiff pursuant to Fed. R. Civ. P. 21. Since Defendant UPS responded to the show cause order simply it "agrees that severance of Plaintiff Johnson's and Plaintiff Goodwin's claims into separate trials is appropriate" (Court File No. 281), the Court presumes it is relying on its prior arguments on this issue now.

Plaintiffs now argue although the numerous plaintiffs and claims presented in the first trial involved individual matters, the remaining plaintiffs and claims now before the Court are proper to proceed in a single trial. Particularly, Plaintiffs argue they were subjected to harassment by the same individuals, even though the events of harassment may not have been the same, and both Plaintiffs were aware of a number of the same examples of harassment, so their evidence will overlap significantly (Court File No. 284).

Fed. R. Civ. P. 20(a) provides in relevant part:

(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action . . . A plaintiff . . . need not be interested in obtaining . . . all the relief demanded.

6

> Judgment may be given for one or more of the plaintiffs according to their respective rights to relief . . .

Fed. R. Civ. P. 21 provides:

> Misjoinder and Non-Joinder of Parties.
>
> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

The Sixth Circuit has held the terms "transaction or occurrence" in Rule 20(a) are to be given a broad and liberal interpretation. *Lasa Per L'Industria Del Marmo Soc. Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) ("the intent of the Rules is that all issues be resolved in one action, with all parties before one court, complex though the action may be").

The purpose of Rule 20(a) is to promote judicial economy and trial convenience. *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 230 (M.D. Tenn. 2001) (*citing Mosely v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). It is governed by the general principle to allow "the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) (joinder of claims, parties and remedies is strongly encouraged). *See also Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) ("the purpose of Rule 20(a) in permitting joinder in a single suit of persons who have separate claims, albeit growing out of a single incident, transaction or series of events, is to enable economies in litigation . . ."); *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974) (joinder promotes judicial economy, trial convenience and expedites the final determination of disputes); *Crutcher v. Kentucky*, 1992 WL 98020 at *3 (6th Cir. May 11, 1992) ("under the Federal Rules of Civil Procedure, particularly Rules 2, 18-20, and 42, joinder of claims, parties and remedies is strongly encouraged

7

because the impulse of the Rules is toward entertaining the broadest possible scope of action consistent with fairness to the parties.").

A court may sever misjoined parties, so long as no substantial right will be prejudiced, where the test for permissive joinder is not satisfied. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). A district court exercises its discretion in determining whether to sever claims pursuant to Rule 20. *Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1325-26 (11th Cir. 2000); *Rogers*, 130 F.3d at 1351; *Mosely*, 497 F.2d at 1332; *Bridgeport Music*, 202 F.R.D. at 232. The District Court in *Bridgeport Music*, 202 F.R.D. at 231-32 aptly set forth the parameters within which the district court may join parties and claims or sever them:

> Permissive joinder is circumscribed, however, by the dual requirements of a common question and transactional relatedness. *See Mosley*, 497 F.2d at 1333. The first of these, the common question test, is usually easy to satisfy. *See* 4 James Wm Moore et al., *Moore's Federal Practice*, ¶ 20.04 (3d ed.1999). The transactional test, however, is more forbidding. It requires that, to be joined, parties must assert rights, or have rights asserted against them, that arise from related activities--a transaction or an occurrence or a series thereof. *See, e.g.*, *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 682 (6th Cir.1988) (finding that a loan made to the plaintiff by one defendant was unrelated to loans made to the plaintiff by other defendants and that joinder was therefore improper); *Demboski v. CSX Transp., Inc.*, 157 F.R.D. 28, 29-30 (S.D.Miss.1994) (holding that four separate railway accidents involving the same defendant did not constitute a series of occurrences); *Rappoport v. Steven Spielberg, Inc.*, 16 F.Supp.2d 481, 496 (D.N.J.1998) (severing a plaintiffs' claims against defendants where plaintiff alleged copyright infringement in separate works in different media). This test is easy to articulate, but it is often difficult to apply. Because it does not lend itself to bright line rules, it generally requires a case by case analysis.

Defendant UPS previously asserted Plaintiffs' claims do not meet the transactional relatedness test required under Rule 20(a) because their claims are based on each of their separate work histories. Plaintiffs, however, argue their claims meet the transactional relatedness test because they allege they were subjected to a hostile work environment by Defendant UPS, and this harassment constituted a series of transactions or occurrences under Rule 20(a).

8

Neither party has pointed the Court to any recent Sixth Circuit decisions on the severance issue in the Title VII racial harassment arena. The Court in its previous severance decision in this case exhaustively analyzed the few cases on point throughout the federal courts, and noted the dearth of caselaw directly on point in the Sixth Circuit to direct its decision. The Court in its own research has discovered that is still the case, as the Sixth Circuit has not considered this precise issue in the intervening years since the Court's decision. Therefore, the Court will not repeat that analysis but here reiterates its prior finding, given the purpose of Rule 20 and the Supreme Court's decision in *United States v. Mississippi*, 380 U.S. 128 (1965), the Eighth Circuit's ruling in *Mosley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974) and its progeny reflect the better interpretation of Rule 20's scope than the contrary line of cases cited by Defendant UPS in its prior filings on this issue.

In *Mosely v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974), the Eighth Circuit found the plaintiffs met the second Rule 20(a) requirement of a question of law or fact common to all parties despite individual factual allegation because

> whether the Damoclean threat of a racially discriminatory policy hangs over the racial class is a question of fact common to all the members of the class.
>
> The right to relief here depends on the ability to demonstrate that each of the plaintiffs was wronged by racially discriminatory policies on the part of the defendants General Motors and the Union. The discriminatory character of the defendants' conduct is thus basic to each plaintiff's recovery. The fact that each plaintiff may have suffered different effects from the alleged discrimination is immaterial for the purposes of determining the common question of law or fact. Thus we conclude that the second requisite for joinder under Rule 20(a) is also met by the complaint.

*Id.* at 1134 (internal citations omitted). Numerous other courts have followed the *Mosely* lead allowing joinder of plaintiffs whose individual claims were often very different from one another but who all alleged a pattern or practice of discrimination by the employer.

9

The Court particularly finds several district court cases it analyzed in its previous severance opinion persuasive on this issue. In *Maclin v. Northern Telecom, Inc.*, 1996 WL 49558 (N.D. Ill. August 28, 1996), two plaintiffs alleged the defendant discriminated against them on the basis of their race and sex. The court granted the defendant's motion to sever where it found the discrimination complained of took place at different times even though the time of plaintiffs' employment overlapped, there was no indication that the discrimination alleged by plaintiffs involved any of the same people, there was no allegation the plaintiffs' terminations were related or these decisions were made by the same supervisor or within the same department, and plaintiffs made no showing that a joint proceeding would further judicial economy. *Id*. at *7. The court stated, "[i]f [plaintiffs] can show that separate trials would result in overlapping proof and duplication in testimony, this court may entertain a motion to reconsider this ruling." *Id.* at 7 n.4.

In *Weir v. Litton Bionetics, Inc.*, 1986 WL 11608 (D.Md. May 29, 1986), two plaintiffs terminated within three months of each other alleged wrongful termination on the basis of age. The court severed the plaintiffs' claims on the ground the plaintiffs failed to assert a right to relief arising out of the same transaction or series of transactions where each plaintiff was terminated by a separate supervisor and each plaintiff worked in a separate division which operated independently of one another with virtually no interchange of personnel. *Id*. at *6. The court reasoned, "[t]he work history of each plaintiff was quite different, and the claims and defenses of each can be fairly considered only in the light of the separate work history of each." *Id*. The court concluded to try these claims together would prejudice the defendant as "it is highly likely that confusion will result when the different facts pertaining to these different claims are presented at a single trial." *Id.*

10

Finally, the Court would draw the parties' attention to *Ward v. Johns Hopkins Univ.*, 861 F. Supp. 367 (D. Md. 1994). In that case, the plaintiffs, two females, each alleged the same individual sexually harassed them while they were employed by the defendant. Each plaintiff's specific factual allegations of harassment differed and they were not employed by the defendant during the same time period. However, the harassing employee was the same in both of their claims, as were allegations the same three supervisors had notice of the harassment but failed to remedy it. *Id.* at 378. The district court found severance inappropriate in that case because of the common questions of law and fact arising out of the same series of occurrences. Further, the court held any undue prejudice to the defendant from the joinder of the claims could be cured by a limiting instruction to the jury requiring it to "distinguish between the idiosyncracies of each case . . . [,] keep each plaintiff's claim separate, . . . force each plaintiff to prove his or her claim and damages separately . . . [and that] the mere presence of several plaintiffs does not permit an inference of liability." *Id.* at 379.

The Court finds the claims now before it are not the same as those that compelled severance in the *Maclin* and *Weir* cases. Thus, the factors that persuaded those courts to sever the plaintiffs here persuade this Court to rule in the opposite manner and allow the cases to remain joined for trial. However, the facts of this case are somewhat similar to those in *Ward* that mandated continued joinder of the plaintiffs' claims.

While the Court originally believed all seven original plaintiffs' claims would involve many overlapping issues of fact, and denied Defendant's motion to sever on that basis (*see* Court File Nos. 72, 73), that was not the case as the evidence was presented during the trial. However, after evaluating the evidence regarding just the two remaining plaintiffs' racial harassment claims under

11

Title VII only, and giving the plaintiffs the benefit of all possible doubt, the Court concludes there may be sufficient overlap, as outlined above in the Facts section.  Plaintiffs were employed by Defendant UPS during a significant, concurrent period of time.  Both plaintiffs were supervised by Steve Burtnett, and although each alleges different actions by Burtnett amounted to racial harassment, the presence of this common actor as the centerpoint of both plaintiffs' harassment claims weighs in favor of consolidation for trial.  But Steve Burtnett is not the only common actor in these claims; both plaintiffs testified they knew of the altercation between Eddie Thomas and John Althoff, and Defendant UPS's handling of it.  Additionally, both plaintiffs relied on the testimony of union business agent Wes Trotterchaud regarding his impressions of racial animus by Defendant UPS's supervisors.  Each plaintiff presents evidence involving Chattanooga division manager Gary Todd.  Both plaintiffs testified they believe they received more severe discipline than white employees received for the same actions; while the actors in these allegations may have been different, this common allegation is significant.  In short, both plaintiffs intend to put on many of the same witnesses and evidence in support of their claims.

Plaintiffs' claims of a hostile work environment for African Americans within the Chattanooga facility meet Rule 20's transactional relatedness requirement of a series of occurrences or transactions  *See Mosely*, 497 F.2d at 1333-34.  As to the second requisite, the question of fact common to both Plaintiffs is whether Defendant UPS actually harassed these two African Americans employees at the Chattanooga facility on the basis of their race.  *Id*. at 1334.  Thus, both prongs of the test are met for permissive joinder under Rule 20.  Further, considerations of convenience, economy, and expedition persuade the Court joinder is appropriate.

12

**IV. CONCLUSION**

For the reasons stated herein, the Court **WILL NOT SEVER** Plaintiffs' claims for trial.

An order shall enter.

                                          **/s/**
                                          **CURTIS L. COLLIER**
                                          **CHIEF UNITED STATES DISTRICT JUDGE**